SPRINGFIELD & ILLINOIS SOUTHEASTERN RAILWAY CO.

*v.*

THE COUNTY CLERK OF WAYNE COUNTY *et al.*

1. MANDAMUS — *will not be awarded in doubtful cases.* The writ of mandamus is one of the extraordinary remedies provided by law, and should never be awarded unless the party applying for it shows a clear right to have the thing sought by it done and by the person or body sought to be coerced. In doubtful cases it should not be granted.

2. The petitioner in an application for a mandamus, like a plaintiff in an ordinary case, is bound to state a case *prima facie* good.

3. TAXATION *to pay donation to railroad — certificate of election — by whom.* When the law requires the trustees of a township to certify the result of an election on the question of a donation to a railroad company, to the county clerk, a petition for a mandamus to compel the county clerk to

extend a tax to pay such donation, which alleges that a majority of the votes cast were in favor of such donation, and that that fact was certified by the town clerk to the county clerk, and that the town clerk was the proper officer to so certify, is bad on demurrer.

4. ELECTION *in respect to donation — identity of proposition voted upon.* And where the petition shows that two propositions were submitted to the people of a town upon the question of a donation to a railroad company, one for the levying of a tax, and the other for issuing bonds to pay such donation if made, and that a majority of the votes cast were in favor of " said proposition," a mandamus to compel the county clerk to extend the tax mentioned in the first proposition will not be awarded.

THIS was a petition presented in this court for a mandamus.

Mr. THOMAS W. EWART, and Mr. H. TOMPKINS, for the petitioner.

Mr. JAMES McCARTNEY, for the respondents.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This is an original proceeding in this court, commenced by the Springfield and Illinois Southeastern Railway Co., for a mandamus to compel the county clerk of Wayne county to extend a tax on all the taxable property in Barnhill township in that county, to raise a sum sufficient in the aggregate to pay the amount of a donation alleged to have been made by a vote of the inhabitants, on the 10th day of November, 1868, to the " Illinois Southeastern Railway Company." The petitioners bring this suit for the use of Cutler, Dodge & Co.

By the act of the general assembly, approved February 25, 1867, certain persons therein named were created an incorporation by the name of " The Illinois Southeastern Railway Company," and authorized to construct a railroad from some suitable point on the Chicago branch of the Illinois Central Railroad, running thence by the way of Fairfield, in Wayne county, to the Ohio river.

It was further provided that any town in any county, under township organization, was authorized to make a donation to

said company, not to exceed in amount the sum of $30,000, if a majority of all the votes cast by the legal voters of such township at an election called for that purpose be in favor of the proposition.

In pursuance of the provisions of the act of incorporation, the directors of the company submitted to the legal voters of Barnhill township, Wayne county, a county under township organization, a proposition to be voted upon at an election to be held on the 10th day of November, 1868, in substance as follows:

First. That the town of Barnhill donate to the Illinois Southeastern Railway Company the sum of $20,000, to be paid in three equal installments, by a tax levied upon all the taxable property in the township, respectively in the years 1869, 1870 and 1871, but not to be paid over to the railway company until it had complied with certain conditions therein specified, and in case the company never complied with the conditions, the funds so raised were to be paid over to the proper authorities of the town of Barnhill, to be disposed of as other township funds.

Second. That if the necessary legislation could be obtained from the State legislature at the next session, authorizing and empowering the town of Barnhill to issue township bonds payable in five years, or at any time thereafter, not exceeding twenty years, at the option of the town, bearing interest at the rate of ten per cent per annum, the company would receive such bonds in lieu of the amount to be raised by taxation, as provided in the first clause of this proposition, and in that event the tax was not to be levied.

The proposition was published in a newspaper published in the county of Wayne, as required by law, and the town clerk of the town of Barnhill gave the requisite notice of the election. It is averred a majority of all the votes cast at the election was in favor of accepting the proposition, and that the result of such election was certified to the county clerk by the town clerk of Barnhill township.

It is further represented, the legislature at its next session after the election passed an amendatory act to the company's original charter, approved February 24, 1869, in and by which, among other things, the donation voted by the inhabitants of the town of Barnhill was declared legalized, and the town was authorized to issue bonds for the amount of the donation corresponding in sums, time of payment and interest with the proposition submitted at the election, without submitting the question of paying the donation in bonds to a vote at an election to be called for that purpose. But it is alleged, the question of paying the donation in bonds was subsequently submitted to the inhabitants of the town, and that the vote was against the proposition, and thereby the donation became payable in money, as specified in the first clause of the proposition originally submitted, the whole line of the road having been completed and the cars running thereon through the town of Barnhill, and within the corporate limits of the town of Fairfield on the 1st day of June, 1870.

It is further represented, that by virtue of the powers vested in the corporations by their respective charters and the general railroad law of 1849, the "Illinois Southeastern Railway Company," and the "Northwestern Railroad Company," both at the time in process of construction, in the month of February, 1870, by their mutual agreement, consolidated, making one continuous line of railroad from Shawneetown, through Barnhill township and within the limits of the incorporated town of Fairfield, to Edgewood, on the Chicago branch of the Illinois Central Railroad, and thence in a northwesterly direction, through the city of Springfield, to Beardstown, on the Illinois river, adopting as the name of the consolidated company "The Springfield and Illinois Southeastern Railway Company," and by the agreement of consolidation and the laws of the State authorizing the same, all the franchises, rights, property, real, personal and mixed, choses in action and claims of whatever nature belonging to the constituent companies, became and were vested in the consolidated company.

It is also represented the several installments of the donation have long since become due, according to the terms of the proposition submitted, yet the county clerk of Wayne county, although requested by petitioner, through its officers, has refused to extend the tax upon the property of Barnhill township, to raise a sum sufficient to pay the amount of the alleged donation.

These constitute the substance of the material allegations of the petition, to which the respondents have filed a demurrer, upon which the cause has been submitted for decision.

The writ of mandamus is one of the extraordinary remedies provided by law, and should never be awarded unless the party applying for it shall show a clear right to have the thing sought by it done, and by the person or body sought to be coerced. In doubtful cases it should not be granted. *The People* v. *Hatch*, 33 Ill. 9; *The People* v. *The Mayor of Chicago*, 51 id. 17.

The petitioner is bound, like a plaintiff in an ordinary case, to state a case *prima facie* good, and the question is, has it been done in this case? We think some of the objections taken by the demurrants must be sustained.

It was certainly not the duty of the county clerk to extend the tax on the property in Barnhill township, until there was legitimate evidence on file in his office that a vote had been taken in the town, authorizing the tax to be levied for the purposes demanded. The law under which the vote was taken provided the result of the election upon the proposition to make the donation should be certified by the "trustees of said town," to the county clerk in the county in which the town is situated, before he is authorized to extend the tax to pay the donation. The certificate required by law to be made by the "trustees of said town," has not and cannot be made, for the reasons there are no such officers in towns organized under the general township organization law. The allegation is, the result of the election in this case was certified by the town clerk of the town of Barnhill, who, it is alleged, was the proper officer to make such certificate.

The answer is, the town clerk was not authorized, by the law under which the vote was taken, to certify the result, nor was it his duty by any general law to make any such certification. Being without authority of law, the certificate of the result of the election made by him was an absolute nullity. Hence it cannot be said there was any legitimate evidence in the county clerk's office that an election had been held in Barnhill township on the 10th day of November, 1868, or at any other time, for the purpose of voting on a proposition to make a donation to the railway company. How could the county clerk know that a majority of the votes cast at that election was in favor of the proposition submitted. The certificate of the town clerk was no evidence of that fact, and it is not claimed there was any other evidence on file when petitioner made the demand on the county clerk to extend the tax. This view of the law is not answered by the suggestion, the demurrer admits the allegation in the petition, that a majority of the votes cast at the election was in favor of the proposition submitted ? That fact was not known to the county clerk officially, when the demand was made upon him to extend the tax. Hence he was not authorized to act. The right to do the act sought to be coerced must exist at the time the party is called upon to perform it. The writ, if awarded, could confer no new authority. *The People* v. *Hatch, supra.*

There is, however, an ambiguity in the statement of petitioner's cause which would constitute a technical ground for sustaining the demurrer. The proposition submitted to the voters of Barnhill township, at the election called to be held on the 10th day of November, 1868, was twofold: first, to donate $20,000 in money to be paid in three equal installments, by taxes to be levied and collected respectively, in the years 1869, 1870 and 1871; and second, to pay the amount of the donation by the issuing of township bonds, and in that event the tax was not to be levied.

It is alleged a majority of the votes cast at the election was " for said proposition." What proposition did the people ac-

cept? There were two propositions submitted. If the latter was accepted, the tax which petitioner now seeks to have levied was not to be levied at all. It is not distinctly alleged, nor does it clearly appear, the inhabitants of the town of Barnhill ever consented by any vote that any tax should be levied upon the property of the township to pay a donation to the railway company, and without such consent none could be levied.

The petitioner has not shown that clear right, nor indeed any right at all to the relief sought, and hence the demurrer must be sustained. Judgment will be rendered for the respondents.

*Judgment affirmed.*